IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **JUDDS BROTHERS CONSTRUCTION CO.**, a Nebraska Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>**MERSINO DEWATERING, INC.**, a Michigan Corporation;<br><br>Defendant. | 8:16CV1<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Disqualify Plaintiff's Proposed Expert Witness Dave Gamerl, ECF No. 54, filed by Defendant Mersino Dewatering, Inc. ("Mersino"). For the reasons stated below, the motion will be granted.

## BACKGROUND

The City of Council Bluffs, Iowa, hired Plaintiff Judds Brothers Construction Co. ("Judds Brothers") as general contractor on a sewer relocation project. ECF No. 55, Page ID 285. The project required Judds Brothers to dig trenches in order to place new sewer lines. *Id.* Judds Brothers subcontracted with Mersino to dewater the site of the trenches, prior to digging. *Id.*

Dewatering refers to various methods of temporarily lowering an area's groundwater table through the installation of pumps. *Id.* Mersino initially attempted to dewater the site by drilling wells ranging in depth from 45 to 55 feet. ECF No. 64, Page ID 972. When the wells did not dewater the site to Judds Brothers' satisfaction, Mersino installed a well-point system. *Id.* When the well-point system resulted in similarly unsatisfactory dewatering, Judds Brothers retained Griffin Dewatering ("Griffin") to

dewater the site.  *Id.*, Page ID 973.  Griffin drilled wells at depths ranging from 70 to 84 feet, which ultimately dewatered the site to Judds Brothers' satisfaction.  *Id.*

Judds Brothers brought suit against Mersino in the District Court of Douglas County, Nebraska, on November 24, 2015.  ECF No. 1.  Mersino removed the case to this Court on January 4, 2016.  *Id.*  In its complaint, Judds Brothers asserted claims for breach of contract ("Claim I"), negligence ("Claim II"), breaches of implied and express warranties of fitness for a particular purpose ("Claims III & IV"), and unjust enrichment ("Claim V").  *Id.*, Page ID 5–14.  Judds Brothers alleged that Mersino should have been aware—via readily-available information—that drilling deeper wells, such as those ultimately dug by Griffin, was a viable option for dewatering the site, and that installing a well-point system was unlikely to succeed.  In its answer, ECF No. 7, Mersino asserted counter-claims against Judds Brothers for breach of contract ("Counter-claim I") and quantum meruit  ("Counter-claim II").  *Id.*, Page ID 38–39.

In preparation for trial, Judds Brothers disclosed to Mersino its intention to proffer David Gamerl as an expert witness to testify to the "standard of care" for dewatering companies operating in Council Bluffs and to whether Mersino met such a standard in the present case.  Gamerl works as a "team coordinator-branch manager" at Griffin, the third-party company Judds Brothers hired to replace Mersino.  Gamerl Dep. 10:12–15, ECF No. 56-4, Page ID 323.  Mersino moved to exclude Gamerl's testimony as an expert, arguing he lacks sufficient qualifications as an expert and that his testimony did not meet the standard set forth under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  ECF No. 55.  The Court held an evidentiary hearing on the motion on April 13, 2017.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In light of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court must screen proffered expert testimony for relevance and reliability. *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008). "The objective of the *Daubert* inquiry 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722–23 (8th Cir. 2015) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

In assessing reliability, the Court should consider factors including whether the proposed expert's theory, methodology, or technique: (1) can be and has been tested; (2) has been subjected to peer review; (3) has a known or potential rate of error; and (4)

is generally accepted by the relevant community. *Id.* This list of factors is not exclusive, and this Court is allowed "great flexibility" in its analysis. *Jaurequi v. Carter Mfg. Co.*,173 F.3d 1076, 1082 (8th Cir. 1999).

The expert's information or opinion must also "assist" the trier of fact in understanding or determining a fact in issue, *see* Fed. R. Evid. 702(a), which "goes primarily to relevance." *Daubert*, 509 U.S. at 591. "The trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Am. Auto. Ins. Co.*, 783 F.3d 720, 723 (8th Cir. 2015) (alteration in original) (quoting *Kuhmo Tire*, 526 U.S. at 156).

Throughout the Court's assessment of the admissibility of an expert's opinion, *Daubert* makes clear that the Court "should also be mindful of other applicable rules." 509 U.S. at 595, *see also United States v. Kime*, 99 F.3d 870, 884 (8th Cir.1996). This includes Fed. R. Evid. 403, which states that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## DISCUSSION

Judds Brothers has the burden of establishing the admissibility of Gamerl's testimony by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592). In its brief, Judds Brothers stated that it intends to have Gamerl testify to the "standard of care" that dewatering companies in Council Bluffs, Iowa, should use when drafting proposals and executing

4

dewatering projects, and to Mersino's alleged breach of that standard of care. ECF No. 64, Page ID 974, 975, 987.

Specifically, Gamerl's proffered expert report, ECF No. 56-3, stated that Griffin crafts its dewatering proposals around the needs of the general contractor and that this may require Griffin to review geotechnical data to familiarize itself with the "specific soils" at the project site. *Id.*, Page ID 317–18. The report concluded that these steps and methods comprise "the standard of care which should be utilized when attempting to dewater a construction project in and around Council Bluffs, Iowa." *Id.*

Regarding the dewatering project at issue in this case, Gamerl's report stated that Griffin believed it needed to drill deeper wells, to place them below the clay layer because in Council Bluffs, this layer "does not always act like a barrier." *Id.*, Page ID 319. In his report, Gamerl stated "I simply do not understand why Mersino did not formally propose . . . to drill deeper wells to get below the clay layer" and concluded that "Mersino breached the above-described standard of care and its contract . . . ." *Id.* Gamerl's report also speculated that Mersino may not have proposed drilling deeper wells "so that [it could] appear cheaper" or possibly due to a "lack of a expertise" on Mersino's part. *Id.*

Gamerl's statements in his report regarding a "standard of care" are conclusory, and his comments as to Mersino's motives are speculative. It is noted that all of Gamerl's training and experience in dewatering, although extensive, is limited to one company—Griffin. *See* ECF No. 64, Page ID 981. At his deposition, Gamerl stated that he did not know what other companies considered to be the standard practice for dewatering projects. Gamerl Dep. 95:22–96:1, ECF No. 24, Page ID 344. Gamerl also

stated that he never discussed with anyone what the industry's standard practices were or should be "outside of Griffin." *Id.*, 96:8–12. Rather, Gamerl stated that the practices he described were standard on the part of Griffin, and he believed them to be the best way to conduct such work. *Id.*, 96:5–7 ("[W]ith regard to dewatering, this is the standard of care that . . . I think should be used.").

Gamerl stated in his report—and reiterated in his deposition—that the standard of care in Council Bluffs, Iowa, "is to act reasonably to get the job site dewatered for the contractor." ECF No. 56-3, Page ID 319; *see* Gamerl Dep. 122:8–15, ECF No. 56-4, Page ID 351. However, when asked how such a standard applied to a situation like the present case—*i.e.*, where a subcontracting dewatering company made multiple unsuccessful attempts to dewater a site before being replaced—Gamerl stated that liability would depend on the agreement between the company and the contractor. Gamerl Dep. 108:23–111:9, ECF No. 56-4, Page ID 347–48; *id.*, 121:12–124:13 ECF No. 56-4, Page ID 351 ("Q: And if a new subcontractor came in and tried . . . and it worked . . . would you expect to be backcharged for any damages the contractor incurred . . . ? A: Depending on how I worded my agreements.").

Gamerl's knowledge and experience do not provide any basis for a "standard of care," or establish any standard practice for companies engaged in dewatering operations in and around Council Bluffs, Iowa. Rather, Gamerl ultimately referred to the terms of the parties' contract as the basis for the rights and responsibilities of the parties. At the evidentiary hearing, counsel for Judds Brothers sought to elicit Gamerl's opinion as to whether Mersino breached its contract with Judds Brothers. The Court considers this question to be a matter not within the purview of an expert witness. *See*

*Weitz Co., LLC v. Lexington Ins. Co.*, 786 F.3d 641, 646–47 (8th Cir. 2015) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003)), *reh'g denied* (June 17, 2015).

Judds Brothers has not met its burden of demonstrating that Gamerl is qualified to testify as an expert regarding any "standard of care" generally accepted in the dewatering industry, nor has Judds Brothers demonstrated that Gamerl has specialized knowledge that would assist the trier of fact in determining any fact in issue under Rule 702. Mersino's motion to disqualify Gamerl as an expert witness will be granted. Gamerl may be called as a fact witness.

Accordingly,

IT IS ORDERED: The Motion to Disqualify Plaintiff's Proposed Expert Witness Dave Gamerl, ECF No. 54, filed by Defendant Mersino Dewatering, Inc., is granted.

Dated this 20th day of April, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge